## Joshua Nash *et ux. versus* Pliny Cutler *et al.*

╰ testator having given certain annuities "to be paid by his executor," proceeds thus : I give to my wife the use and improvement of one third part of all my real and personal estate, during her natural life ; and I give the same at her decease to my children, to hold the same to them, their heirs and assigns. I give all the residue of my estate, real and personal, to my children, to be equally divided between them, and to be distributed to them as they shall respectively arrive at the age of twenty-one years, so far as the same can be done, consistently with the lien hereinafter created ; to hold to them and their heirs and assigns forever, subject to the payment of the legacies herein before given ; and I charge the residue of my estate, real and personal, herein bequeathed to my children, with the payment of the annuities aforesaid ; and I authorize my executor to receive the rents, income and interest of such residue, and out of the same to pay the annuities aforesaid, and to apply the whole or a part of the remainder of said rents to the support and education of my children until they respectively arrive at the age of twenty-one years. It was *held*, that the third part of the estate, given to the wife for life with remainder to the children, was not subject to the payment of the annuities.

*Held* also, that the executor was to pay the annuities, and that he ought to retain at his disposal a sufficient fund to meet this charge, instead of leaving the annuitants to resort annually to the persons who might hold the different parcels of the real estate.

*Held* also, that a surplus fund in the executor's hands, which had accrued from the rents of the real estate, was a proper fund to be set apart to raise that portion of the annuities which was charged on the rents of the real estate.

The Court refused to direct the executor to make an investment in an annuity office, to enable him to make a settlement of the estate, deeming it more proper that he should remain a trustee for the payment of the annuities ; but it was decreed that he should set apart a certain sum, sufficient to raise the annuities, one half of it to be taken from the personal, and the other half from the rents of the real estate, by which means he would be enabled to make a distribution of all the rest of the estate.

Bill in equity.

The last will of Beza Tucker, dated March 6th, 1820, and proved June 6th, 1820, is made a part of the bill.

The testator bequeaths to each of three sisters $75 a year, to each of two brothers $100 a year, and to Ann Sewall $50 a year, for their respective lives, "to be paid by my executors"

The will then proceeds as follows : " I give and devise to my beloved wife Margaret, the use and improvement of one third part of all my real and personal estate, during her natural life ; and I give and devise the same, at her decease, to my children, hereinafter named, to hold the same to them, their heirs and assigns."

" I give and bequeath all the rest, residue and remainder of my estate, real and personal, to my son George Washington, and my daughters Mary, Margaret, Paulina and Ellen, to be equally divided between them ; and to be distributed to them, as they shall respectively arrive at the age of twenty-one years, and not before ; so far as the same can be done, consistently with the lien hereinafter created ; to hold to them, their heirs and assigns forever ; subject to the payment of the legacies herein before given ; and I do hereby charge the rest, residue and remainder of my estate, real and personal, herein bequeathed to my children, with the payment of the annuities aforesaid. And I do hereby authorize and empower my executors to receive the rents, income and interest of the residue of my estate, real and personal, hereby bequeathed to my children, and out of the same to pay the annuities aforesaid, and also to appropriate and apply the whole of the remainder of said rents, income and interest, or such part as they shall judge necessary and proper, to the support and education of my children, until they respectively arrive at the age of twenty-one years. And also to make insurance on my real estate against loss by fire, which is situated in Boston or Roxbury, if they think proper."

The bill alleges, that the testator died leaving Margaret, his widow, and the five children above named ; that Paulina, one of the children and one of the plaintiffs, has survived the widow and the other children ; that she intermarried with Joshua Nash, the other plaintiff, in 1830 ; that Cutler is the sole surviving executor ; that he has in his hands a large amount of the personal estate and income of the real estate of the testator ; that Joshua Nash is entitled to the possession of Paulina's share of the personal and real estate, so far as the same is not necessary to pay the annuities ; and that he is entitled to have a portion of the real and personal estate set aside

to pay the annuities, and to have the same assigned and paid over to him from time to time as the annuities shall be extinguished.

The executor, in his answer, professes his readiness to join in any arrangement which can be made without risk to himself or inconvenience to the annuitants, whereby this incumbrance, which is supposed to extend over the whole real estate, can be removed.

A report was made at this term by a master in chancery, in which he recommends that the executor be ordered to deposit in the office of the Massachusetts Hospital Life Insurance Company, the sum of $10,000, and apply the income thereo. to the payment of the annuities ; one half of that sum to be taken from the personal estate in the executor's hands, and the other half from the income received by him from the real estate.

A report of this case, on other points, is published in 17 Pick. 491, where further particulars are stated.

*Aylwin* and *Cooke*, for the plaintiffs, said that the third part of the estate, real and personal, the income of which was given to the widow for her life, was not charged with the annuities ; that they were charged proportionally on the other two thirds of the personal estate and the other two thirds of the real estate ; that the plaintiffs did not object to having $5000 of the personal estate placed in the office of the Life Insurance Company ; that no part of the real estate was to be set aside for the payment of a portion of the annuities, but that the executor was to pay the same until the real estate should be distributed under the will, and thenceforward the annuitants were to resort annually to the persons holding the several parcels of the real estate. *Swasey* v. *Little*, 7 Pick. 296 ; *Emerson* v. *Cutler*, 14 Pick. 121.

*Washburn*, for the defendants, contended that the widow being deceased, the above mentioned third part of the estate must contribute to the payment of the annuities ; *Hale* v. *Cox*, 3 Bro. C. C. 324 ; *Waring* v. *Ward*, 5 Ves. 675 ; *Noel* v. *Henley*, 7 Price, 259 ; *Hawley* v. *James*, 5 Paige, 449 ; and that the exe·utor could not part with the funds for paying the

*March 22d.*

Nash
v.
Cutler

*March 27th*

annuities, without incurring personal liability    *Andrews* v.
*Sparhawk*, 13 Pick. 393 ; *Dorr* v. *Wainwright*, 13 Pick
328.

SHAW C. J.   This cause, having been referred to a master,
who has made his report, now comes before the Court 'or fur-
ther directions, in two or three particulars.

It has heretofore been decided, that the annuities were
chargeable, one half on the real, and one half on the personal
estate. [*Emerson* v. *Cutler*, 14 Pick. 108.] At first, it is
probable, this question was immaterial, because both kinds of
estate thus charged, went in equal proportions to the same per-
sons, viz. to the five children. But by subsequent events,
other persons had acquired rights, in different proportions, and
it had become necessary to settle this question.

Now another question arises, viz. whether this charge ex-
tends to all the estate given by the testator to his five children,
or whether the one third given to the wife for life, with re-
mainder to the children, is first to be deducted.

This depends upon the construction of the will.   The tes-
tator gives to his wife the use and improvement of one third of
his real and personal estate, for her natural life ; then he gives
and devises the same, at her decease, to his five children, to
hold to them, their heirs and assigns.

He then gives the rest and residue of his real and personal
estate to his five children enumerated, charged with the pay-
ment of these annuities.

The Court are of opinion, that to form the residue thus
charged, the third thus previously given, absolutely and without
any reservation, is first to be deducted. Of course, the one
third is to be paid out and distributed to the legatees, free from
this charge, and the remaining two thirds constitute the portion
charged with the payment of the annuities.

2. The next question is, whether the whole balance in the
executor's hands is to be paid over to the legatees, leaving the
annuitants to seek the payment of their annuities from the lega-
tees or the purchasers of the real estate. The Court are
clearly of opinion, that it is not. The will expressly directs
that the annuities shall be paid by the executor. The will

charges a large amount of estate as a security for this payment, and directs that it shall be paid over and distributed to the legatees only so far as it can be done consistently with this lien. The effect of these directions, taken together, is, that a sufficient portion of the real and personal estate shall remain liable to the disposal of the executor to meet this charge ; which is effectually creating a trust. Where a will directs acts to be done, which necessarily require the intervention of a trustee to hold the property, the executor is a trustee, by necessary implication. *Saunderson* v. *Stearns*, 6 Mass. R. 37 ; *Hall, Judge*, v. *Cushing*, 9 Pick. 395 ; *Dorr* v. *Wainwright*, 13 Pick. 328.

But in the present case, it is hardly necessary to resort to this implication, because the will authorizes and directs the executor to reserve enough of the rents and income of the property, and from that source to pay the annuities. This is equivalent to a direction that he shall hold the capital under his control, from which this income is to arise.

3. Another question is, whether for this purpose, the fund already accrued from the rents of the real estate, shall be appropriated to raise that part of the annuities, which is charged on the rents of the real estate. The Court are of opinion, that that is the suitable and proper fund thus to be appropriated and set apart for that purpose.

4. In regard to the investment of this money with the Hospital Life Insurance Company, the Court are of opinion, upon some consideration, that it is not expedient to direct such an investment. The executor is the proper and suitable trustee for this purpose, and it seems to be more proper and agreeable to the ordinary course of the settlement of estates, that he should remain a trustee for this purpose. This is the more proper and necessary, as he is expressly bound by the obligation he is already under, to pay the annuities. He may make any investment which he thinks safe and proper for this purpose. It might perhaps be convenient, to enable the executor to settle the whole estate, to direct him thus to make this investment, if he could thereby be discharged. But perhaps the result will be the same when he is directed to reserve $10,000

for this purpose, one half from each fund, as proposed by the master, as he will then be able to pay over and distribute all the residue, and thus make a full settlement of the estate.

The decree may be drawn up accordingly.